UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                    )
DAVID M. GOLDEN, et. al.,                )
Plaintiffs                                          )
                                                    )
v.                                                     )          CIVIL ACTION NO:  04-10835
                                                    )
COUNTY OF SUFFOLK,                     )
Defendant                                        )
_____  )

**DEFENDANT, SUFFOLK COUNTY'S, MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

### I.          INTRODUCTION

The Plaintiff, John Connolly, ("Connolly" or "Plaintiff") an inmate incarcerated in

various State and County Correctional facilities since 1981 allegedly fell while ascending to his

bunk at the Suffolk County House of Correction ("HOC") on February 3, 2003 sustaining injury.

Prior to 2003, Plaintiff had been incarcerated at the Suffolk County House of Correction on six

(6) occasions from 1991-1992, 1995-1998, 1998–1999, 1999-2001 and 2001-2003.[1]  In addition

to the Suffolk County HOC, Plaintiff had also been incarcerated at the Norfolk County House of

Correction, Barnstable County House of Correction, Massachusetts Correctional Institution

("MCI") at Concord and MCI Bridgewater.[2]  None of the correctional facilities in which Plaintiff

was incarcerated over the past twenty-five (25) years, had bunk beds equipped with ladders.

Indeed, Plaintiff admitted that prior to February 3, 2003, he had never fallen while ascending to

---

[1] Plaintiff was released from custody for a brief period of time in 2003 and thereafter incarcerated in the HOC until
2005.  John Connolly Deposition (hereinafter Connolly Deposition) pp. 17 and 30-31, Exhibit C.  Prior to 1995,
Plaintiff had been incarcerated in 1981 at the Suffolk County HOC at Deer Island, 1982-1985 at MCI Concord,
1987-1988 at the Norfolk House of Correction and 1991-1992 at the Suffolk County HOC. Connolly Deposition pp.
13-14, 17 and 20, Exhibit C.
[2] Connolly Deposition, pp. 170-173, Exhibit C.

or descending from his bunk bed.[3]  Furthermore, Plaintiff admitted that he never made any complaints to officials at any correctional facility, including Suffolk County, that the lack of ladders made it unsafe or dangerous to ascend to or descend from the top bunk.[4]

Notwithstanding, Plaintiff[5] commenced this action pursuant to M.G.L. c. 258 and 42 U.S.C. §1983 against the County of Suffolk ("Suffolk" or "Defendant").  Plaintiff contends that the Defendant maintained a custom or practice of failing to equip bunk with ladders which was deliberately indifferent to plaintiff's constitutional rights under 42 U.S.C. §1983 (Count II)[6];  that Defendant negligently housed Plaintiff in a cell which violated Code of Massachusetts Regulations 105 CMR 451.321; and that Defendant was negligent in failing to instruct on the manner to ascend and descend from the bunk beds (Count I).  Defendant submits that the housing of inmates in cells without ladders attached to the bunk beds does not constitute cruel and unusual punishment and does not constitute deliberate indifference; that 105 CMR 451.321 is a recommended standard and the housing of inmates is a discretionary function under M.G.L. c. 258 § 10(b); and that there is no duty to instruct on the manner in which to ascend a bunk bed. Defendant further submits that Plaintiff's deliberate indifference claim is nothing more than a disguised negligence claim, which has already been dismissed.  Defendant submits that there are no genuine issues of material fact and Defendant is entitled to summary judgment as a matter of law.

---

[3] Connolly Deposition, pp. 170-174, Exhibit C.
[4] Connolly Deposition, pp. 170-174, Exhibit C.
[5] Originally there were six (6) plaintiffs but five (5) have resolved their claims without any admission of liability by Defendant.
[6] Plaintiff asserted the same claim under a negligence theory which was dismissed by Judge Lasker finding that the decision whether to equip bunk beds with ladders is a discretionary function immune under M.G.L. c. 258 §10(b).

## II.    FACTS

Defendant relies upon the Statement of Undisputed Material Facts submitted in conjunction with the instant motion pursuant to Local Rule 56.1.

## III.    STANDARD OF REVIEW

"Summary judgment is warranted if, after reviewing the facts in the light most favorable to the non-moving party, no genuine issues of material fact remain and that the moving party is entitled to judgment as a matter of law." Putnam v. Town of Saugus, 365 F.Supp.2d 151 (D.Mass 2005) citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c).  In order to prevail on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact.  Fed.R.Civ.P. 56(c); Celotex v. Catrett, 477 U.S. 317 (1986).  For purposes of summary judgment, an issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. A fact is material if it is one that has "the potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgardo, 990 F.2d 701, 703 (1st Cir. 1993); Hayes v. Douglas Dynamics, Inc. 8 F.3d 88, 90, (1st Cir. 1993) citing Anderson, 477 U.S. at 248.

As the moving party on this motion for summary judgment, it is the Defendant's burden to show the absence of evidence to support the non-moving party's case.  Garside v. Osco Drug, Inc., 895 F.2d 46 (1st Cir. 1990).  Once the movant has met its burden, the non-moving party "must go beyond the pleadings, and by [its] own affidavits, or by the depositions, answers to interrogatories and admissions on file, designate specific facts showing there is a material issue for trial." Putnam, supra, at 166; Celotex, supra at 323.  "Brash conjecture, coupled with earnest

hope that something concrete will eventually materialize, is insufficient to block summary judgment." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) *quoting* Dow v. United Brotherhood of Carpenters, 1 F.3d 56, 58 (1st Cir. 1993).

## IV.    ARGUMENT

### A.    THE SUMMARY JUDGMENT RECORD IS VOID OF ANY BASIS FOR MUNICIPAL LIABILITY UNDER § 1983

### 1.    Plaintiff Cannot Establish That The Conditions of Confinement Violated the Eighth Amendment and Constituted Deliberate Indifference

In Count II of his complaint, Plaintiff alleges that Suffolk County violated his constitutional rights by requiring him to sleep on a top bunk that was not equipped with a ladder.[7]  Because the Plaintiff cannot establish that the lack of ladders presented a serious risk of harm and the Defendant was deliberately indifferent to such risk, his claim must fail. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

The Eighth Amendment proscribes "cruel and unusual punishments." Farmer, 511 U.S. at 837; Wilson v. Seiter, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (In conditions of confinement cases, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violations); Ingraham v. Wright, supra, 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.E.2d 711 (1977) *quoting* Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290 (after incarceration, only the "'unnecessary and wanton infliction of pain" ' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment."); Rhodes, 452 U.S. at 349 (Constitution does not mandate comfortable prisons, and prisons ... cannot be free of

---

[7] Plaintiff alleged that "the defendant, through its Sheriff or County Commissioners or other employees with final decision making authority, maintained polices or customs of deliberate indifference to the Constitutional rights of inmates such as the plaintiff, which caused the deprivation of the plaintiff's State and Federal Constitutional rights; (Complaint Exhibit 1, ¶14); and "defendant, through its employees, was aware that inmates in its custody had been injured by falling while ascending to and/or descending from bunk bed(s) located off of the floor of its cells." (Complaint, Exhibit 1, ¶12).

discomfort).  A constitutional violation occurs only where the deprivation alleged is, objectively, "sufficiently serious," and the official has acted with "deliberate indifference" to inmate health or safety.  <u>Farmer</u>, 511 U.S. at 838 (The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments").  Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must protect prisoners from violence at the hands of other prisoners. <u>Farmer</u>, 511 U.S. at 826.

To be actionable under the Eighth Amendment, the alleged deprivation by prison officials "must satisfy both an objective component, i.e., the deprivation must be sufficiently serious, and a subjective component i.e., the offending conduct wanton." <u>Gandy v. S.F. Thompson</u>, 1997 WL 369728 at 3 (D.Or.) citing <u>Farmer</u>, <u>supra</u>.  "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to an inmates health or safety."  <u>Id</u>; <u>Manarite v. City of Springfield</u>, 957 F.2d 953, 956 (1st Cir.1991), cert denied, 506 U.S. 837, 113 S.Ct. 113 (1992) (Deliberate indifference "means more than ordinary negligence and probably more than gross negligence").

In <u>Armstrong v. Terrebonne Parish Sheriff</u>, 2006 WL 1968887, *6 (E.D.La. 2006) the Court specifically held that the ***<u>Constitution does not require ladders for bunk beds</u>*** to remedy a fall experienced by Plaintiff. (emphasis added).  In that case, the Plaintiff alleged that failing to equip bunk beds with ladders violated his constitutional rights and constituted deliberate indifference. <u>Id</u>.  Specifically, Plaintiff alleged that there was a table, swivel chair and a bunk bed without a good way to get to the bunk and that he fell from the swivel chair which did not have a locking mechanism. <u>Id</u>. at *2.  The Court held that:

> "Plaintiff asserts a garden variety tort claim, not a claim of civil rights violations cognizable under Section 1983." … Plaintiff's allegations that prison officials

were responsible for his fall and injuries because they assigned him to a top bunk that was not equipped with any climbing apparatus "are allegations of tortuous conduct that do not rise to the level of improper conditions of confinement which violate the Constitution. Defendants cannot be liable under Section 1983 for injures resulting from alleged acts of negligence." Id. at *7.

The Court further stated that a reasonable means of getting into the top bunk, if the inmate would have taken reasonable care for his own safety was available. Id. at *6. Finally, the Court stated that "although the conditions plaintiff described may have been imperfect and inconvenient, plaintiff failed to allege deprivations so extreme that they violate the Constitution or sufficiently serious harm resulting from these problems to meet the requirements of Farmer, and this claim does not rise to the level of constitutional violation. Id. at *6.

Similarly, Plaintiff here alleges that prison officials were responsible for his fall and injury because the bunk bed that he was required to sleep on was not equipped with a ladder and there was no safe way for Plaintiff to ascend to and descend from the bunk bed.[8] Like the Plaintiff in Armstrong, whose allegations amounted to nothing more than a "garden variety tort claim," Plaintiff's claim here is a disguised negligence claim asserted as a Section 1983 claim. Id. at *6. As the facts in Armstrong and this case are nearly indistinguishable, this Court should find similarly dismissing Plaintiff's claim.

Notwithstanding the aforesaid, Plaintiff cannot establish that not providing ladders on bunk beds is a sufficiently serious deprivation (objective) or that such conduct was wanton (subjective). As set forth below, Plaintiff cannot establish that any official of the Department had actual or constructive knowledge of any excessive risk to plaintiff. The record supports this

---

[8] Like the Plaintiff in Armstrong who fell from a chair while ascending to his bunk bed, Plaintiff here also asserts that he fell from a chair while ascending to his bunk bed. Armstrong, 2006 WL 1968887 at *2. The Armstrong Court viewed such claim as a negligence claim and not a deliberate indifference claim. Id.

fact.[9]  Furthermore, Plaintiff cannot establish that any prison official subjectively believed that not equipping bunk beds with ladders posed an excessive risk to plaintiff and subjectively drew that inference but did nothing.  Thus, plaintiff cannot establish deliberate indifference.

Even if Plaintiff could demonstrate that not equipping bunk beds with ladders presented challenges, "the Constitution does not mandate comfortable prisons."  Rhodes, 452 U.S. at 349. Every injury suffered by an inmate does not necessarily translate into constitutional liability for prison officials.  Osolinski v. Kane, 92 F.3d 934 (1996) (prison officials failure to repair an oven door, **<u>although on notice that it was malfunctioning</u>**, did not expose them to liability under the Eighth Amendment for burns sustained by inmate when door fell off) (emphasis added); City of Canton, Ohio v. Harris, 489 U.S. 378, 391 (1989) (it will not suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct---such a claim could be made about almost any encounter resulting in injury).  As set forth in Hoptowit v. Spellman, 753 F.2d 779, 784 (1985) "[n]ot every deviation from ideally safe conditions amounts to a constitutional violation."

Accordingly, as Plaintiff cannot establish that not equipping bunk beds with ladders was sufficiently serious or wanton infliction of pain, he cannot establish an Eighth Amendment violation and deliberate indifference.  Thus, Plaintiff's claim must fail.  Defendant is entitled to summary judgment as a matter of law.

---

[9] As set forth below, between 2000 and 2003, there were only three (3) inmate grievances filed at the HOC relating to bunk beds and eleven (11) reported incidents of inmates allegedly falling while ascending or descending bunks: seven (7) reported incidents in 2002 at the HOC, one (1) in 2003 at the HOC, one (1) in 2003 at the NSJ; one (1) in 1999 at the NSJ; one (1) in 2000 at the HOC; and one (1) in 2000 at the NSJ.  Horgan Affidavit, Exhibit A.  These instances do not establish actual or constructive notice.  Further, there is nothing in the reports of these incidents that indicated that bunk beds without ladders posed serious risk to inmate safety.

2.     __Plaintiff Cannot Establish That Defendant Maintained A Custom or Practice That Was Deliberately Indifferent To Plaintiff's Constitutional Rights.__

The summary judgment record is void of any basis for municipal liability against Defendant under 42 U.S.C. § 1983.[10]  Plaintiff claims that Defendant maintained a custom or practice of failing to equip bunk beds with ladders that was deliberately indifferent to Plaintiff's Constitutional rights under 42 U.S.C. § 1983. Amended Complaint ¶¶12-14.  There is no evidence to support such a claim.  Such allegation, without any evidence, constitutes brash conjecture which is insufficient to block summary judgment. Maldonado-Denis, 23 F.3d at 581. As a matter of law, Defendant is entitled to summary judgment.

In order for the Plaintiff to establish that Suffolk County had an unconstitutional custom or practice, he must prove the following: (1) that the custom or practice "must be so well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice" and (2) that the custom and/or practice was the cause of and the moving force behind the constitutional deprivation. Bordanaro v. McLeod, 871 F.2d 1151, 1156, 27 Fed. R. Evid. Serv. 1164 (1st Cir. 1989); Jones v. Town of East Haven, 493 F.Supp.2d 302, 326 (D.Conn. 2007) (Municipal fault for allowing such a developed "custom or usage" to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices"); Oklahoma City v. Tuttle, 471 U.S. 808, 819, 105 S.Ct. 2427, 2434, 85 L.Ecd.2d 791 (1985); City of Canton, 489 U.S at 385.

To hold a local government entity liable under 42 U.S.C. § 1983 for civil rights violations committed by its employees, a plaintiff must establish that the violations resulted from

---

[10] 42 U.S.C. § 1983 provides that: "any person who, under color of any … custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity or other proper proceeding for redress."  42 U.S.C. § 1983.

implementation or execution of a policy or custom of the entity.  Ford v. City of Boston 154 F.Supp.2d 131 (D.Mass. 2001.); Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); City of Canton, 489 U.S. at 385 ("`It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983'") q*uoting*, Springfield, Mass. v. Kibbe, 480 U.S. 257, 267 (1987).  "Municipal liability under §1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by city policymakers."  City of Canton, supra at 389 citing Pembaur v. Cincinnati, 475 U.S. 469, 483-484, 106 S.Ct. 1292, 1300-1301, 89 L.Ed.2d 452 (1986).

However, municipalities cannot be held vicariously liable under 42 U.S.C. §1983 for their employees' actions unless such actions were pursuant to official municipal policy, and caused a constitutional tort.  Tuttle, 471 U.S. 808; Jett v. Dallas Independent School District, 491 U.S. 701 (1989); City of Canton, 489 U.S. at 385 (Respondeat superior or vicarious liability will not attach under §1983").  Thus, it is insufficient to show that employees of the entity were the cause of the injury. Monell, 436 U.S. 658.

In order to establish that Defendant maintained a custom or practice that was deliberately indifferent to Plaintiff's Constitutional rights, Plaintiff must demonstrate that the policymaking officials had actual or constructive knowledge of the problem but did nothing to end the practice. Bordanaro, supra.  Plaintiff can only prevail if he demonstrates that the municipality knew about a serious risk of harm to a class of inmates and recklessly disregarded that risk.  Farmer, 511 U.S. 825.  Plaintiff cannot demonstrate actual or constructive knowledge of an excessive risk to Plaintiff or a class of inmates by not installing ladders on bunk beds.  Plaintiff also cannot prove

that prison officials recklessly disregarded this alleged known risk. There is nothing in the record to support any such knowledge and reckless disregard.

First, Plaintiff cannot establish the objective component, actual or constructive knowledge by a prison official. Without proving actual or constructive knowledge by a prison official, Plaintiff cannot demonstrate that the custom or practice was "so well-settled" in order to satisfy the first prong. Strikingly, despite Plaintiff's broad allegations and years of discovery, Plaintiff has never identified any prison official who allegedly possessed actual knowledge of an excessive risk to Plaintiff and a class of inmates. Plaintiff never deposed the current Sheriff or past Sheriff, despite allegations which span over two (2) administrations.[11] Notwithstanding, there is nothing in the summary judgment record to establish any such knowledge.

Prior to this incident in February 2003, between 2000 and 2003, there were only three (3) inmate grievances[12] filed at the HOC relating to bunk beds. Further, there was only a total of eleven (11) reported incidents from 1999 to 2003 of inmates allegedly falling while ascending or

---

[11] Plaintiff also never sought to depose the Superintendents of the facilities during the relevant time period. Notwithstanding, in the early 2000s, prior to this incident, prison officials considered whether to install ladders on bunk beds. However, ladders on bunk beds posed a potential danger to the health and safety of inmates because they posed a significant suicide risk by hanging or choking and could be used as weapons by dismantling the ladders or using them during an altercation to choke or otherwise assault another inmate, among others. Ladders were not installed. Affidavit Horgan, Exhibit A and Horgan Deposition, pp. 29-31. In fact, one of the seven (7) reports from 2002 upon which Plaintiff will rely involves an inmate, Thomas Crosby, one of the six original plaintiffs, who was on a Q5, suicide watch status. Horgan Deposition p. 59, Exhibit B. Mr. Crosby had a suicide attempt by hanging while in police custody. This example is demonstrative of the potential dangers ladders would pose. Horgan Deposition p. 59, Exhibit B.

Furthermore, inmates could easily be hurt by falling while ascending or descending to their bunks. Affidavit Horgan, Exhibit A and Horgan Deposition, pp. 29-31, Exhibit B. Recently in June 2007, the Superior Court granted the Plymouth County Sheriff's Department summary judgment on a Plaintiff's negligence claim that ladders on bunk beds were not equipped with safety equipment causing him to fall from the ladder sustaining injury. Specifically, the Court found that the Plaintiff could not prove that defendants were aware of any hazardous condition in the Plaintiff's cell. See decision attached as Exhibit D.

[12] A search was conducted for all grievances relating to the issue of ascending and descending bunk beds from 2000 to 2003 at the HOC. Only three grievances were discovered. One from August 2000, a request to have a cast removed claiming inmate had fallen while coming down from the bunk; another from January 2001, a request to have a bottom bunk due to a medical issue of issue with weight; and a third from January 2001, a request for a bottom bunk due to medical issue with cyst on leg and a claim that there was no ladder to or from the bunk bed. There were no grievances found for the rest of 2001, 2002 or 2003 with respect to bunk beds and a means to ascend/descend. Horgan Affidavit, Exhibit A.

descending bunks at both the NSJ and HOC:  seven (7) reported incidents in 2002 at the HOC;
one (1) in 2003 at the HOC[13]; one (1) in 2003 at the NSJ[14]; one (1) in 1999 at the NSJ[15]; one (1)
in 2000 at the HOC[16]; and one (1) in 2000 at the NSJ[17].  One of those reported seven (7)
incidents at the HOC in 2002 was found to be false with the inmate having lied about falling out
of her bunk bed as initially complained.  Thus, there were only six (6) reported alleged incidents
of falls while ascending or descending bunk beds at the HOC in 2002.  These six reports of
alleged falls by inmates do not contain any specific information regarding the circumstances or
nature of the fall or set forth the extent of any alleged injury sustained.  It is unclear from these
daily reports how or if any of the inmates fell while ascending or descending their bunks.  In fact,
most of these reports contain conflicting versions of how the inmates allegedly fell or were
injured.[18]  Plaintiff conducted no further discovery with respect to these past incidents, did not
request additional information on each of these incidents, never sought to depose the individual
inmates involved or the officers who responded or depose any other official of the Department to
establish that these six (6) incidents provided notice, actual or constructive, to prove deliberate
indifference.  Furthermore, the inmates in those six incidents sustained only minor injuries at
most.  The fact that an inmate allegedly fell does not put officials on notice of the nature of the
injury sustained.  There is nothing in the record to establish that these inmates sustained serious
injuries, thereby placing officials on notice.  Clearly that is insufficient to establish that the
absence of ladders posed any excessive or sufficiently serious risk to inmates to establish
deliberate indifference.

---

[13] This report involved one of the original six plaintiffs whose claim was resolved without any admission of liability.
[14] This report involved one of the original six plaintiffs whose claim was resolved without any admission of liability.
[15] This information was obtained from a civil complaint filed by the Plaintiff.
[16] This information was obtained from a civil complaint filed by the Plaintiff.  Additionally, this inmate was one of the inmates who filed one of the three grievances.  Said grievance was filed after he allegedly fell.
[17] This information was obtained from a notice of presentment letter.
[18] Some of the reports were conflicting with some reports stating that an inmate fell from the top bunk and another report stating that the inmate fell while climbing to or from the bunk. Horgan Affidavit, Exhibit A.

Six (6) incidents in the year 2002 and three (3) grievances filed at the HOC over a three (3) year period are quite insignificant when they are balanced against the number of inmates committed to the HOC each year and the number of times each inmate ascended and descended their bunks.  In 2002, the average daily population at the HOC was between 1500 and 1900 inmates were committed to the HOC.[19]  On a daily basis, approximately 1/3 of those inmates would ascend and descend to and from their bunks approximately six[20] (6) times per day.  Thus, in 2002, inmates ascended and descended the top bunk over **1,277,500 times**.[21]  Six (6) alleged incidents with inmates ascending or descending some 1.2 million times, does not establish actual or constructive knowledge in order to establish deliberate indifference.[22]  See Dunn v. City of Newton, Kansas, et al., 2003 WL 22462519 (D.Kan. 2003) (five specific instances of use of excessive force do not create genuine issue of material fact granting summary judgment to municipality).  When the two additional claims in 2003 are configured for both the HOC and NSJ, the number of alleged reports is even more insignificant because in 2003, there were approximately 19,109 inmates committed and/or detained at both facilities.  Furthermore, if the Court were to consider the claim from 1999 and two from 2000 for both the NSJ and HOC, the total eleven (11) inmates over five (5) years who allegedly fell is even more insignificant considering the number of times inmates, from both institutions, would have ascended to and descended from their bunk bed.[23]

---

[19] Horgan Deposition, p. 33, Exhibit B and Horgan Affidavit, Exhibit A.

[20] Plaintiff testified that he would ascend to and from him bunk between 6 and 9 times per day. Connolly Deposition, p. 55, Exhibit C.  Thus, this number will be used for such calculations.

[21] This calculation was reached as follows:  1750 inmates (difference between 1500 and 1900 inmates which was the average daily population)  / 3 (only 1/3 of that population resided on the top bunk)  x 365 (days per year)  x 6 (number of times up and down per day)  = 1,277,500.

[22] Thus in the 1.2 million times that an inmate ascended to or descended from a top bunk, a fall occurred .0000047% of the time.

[23] From 1999 to 2003, there were 85,408 inmates who came in and out of the NSJ and HOC.  1999: 15,710; 2000: 16,078; 2001: 16,996; 2002: 17,515 and 2003: 19,109 inmates.  Horgan Affidavit, Exhibit A.

Additionally, Plaintiff made no complaints to any official of the Department. Despite having been incarcerated in the Suffolk County House of Correction five (5) times over a period of nine (9) years[24], Plaintiff never filed a grievance relating to the issue of ascending or descending his bunk bed.[25] He never made any complaints to Department officials that access to the top bunk was unsafe or dangerous.[26] Plaintiff also testified that he ascended and descended his bunk between six (6) and nine (9) times per day in 2003.[27] Furthermore, Plaintiff testified that in the twenty (20) years prior to this incident[28], he had never fallen while going up and down to his bunk in any of the correctional facilities where he was incarcerated.[29] Thus, there is nothing in the record to support Plaintiff's claim that prison officials had actual or constructive knowledge of any excessive risk.

Plaintiff also cannot prove the subjective component to establish deliberate indifference. Specifically, Plaintiff cannot demonstrate that any prison officials subjectively knew of an excessive risk of not having ladders on bunk beds, personally (subjectively) drew the inference that Plaintiff or a class of inmates faced an excessive risk of harm by not having ladders yet did nothing. Not only can Plaintiff not demonstrate any subjective knowledge by any official, he has never identified any prison official who allegedly possessed any such knowledge. Without identifying any official who allegedly possessed actual knowledge, it is impossible to prove subjective knowledge on behalf of that individual and the County. Plaintiff admitted that he never filed a grievance[30] or made complaints prior to this incident.[31] Furthermore, Plaintiff has

---

[24] Plaintiff in fact was incarcerated at the Suffolk County HOC six (6) times from 1991-1992, 1995-1998, 1998–1999, 1999-2001 and 2001-2005 (Plaintiff was released for a short period of time).
[25] Connolly Deposition, p. 52, Exhibit C.
[26] Connolly Deposition, p. 51 and p. 174, Exhibit C.
[27] Connolly Deposition, p. 55, Exhibit C.
[28] Plaintiff testified that he was first incarcerated in 1981. Connolly Deposition, p. 17, Exhibit C.
[29] Connolly Deposition, pp. 174-175, Exhibit C.
[30] Connolly Deposition p. 51, Exhibit C.
[31] Connolly Deposition, pp. 174-175, Exhibit C.

never connected any of the three (3) grievances or six (6) reports to any prison official to establish such subjective knowledge.  As supported by the summary judgment record, Plaintiff cannot establish deliberate indifference in order to block summary judgment.

Notwithstanding the fact that Plaintiff cannot establish actual, constructive or subjective knowledge, the Department of Correction ("DOC") audited the HOC and NSJ two times per year pursuant to the M.G.L. c. 127 §1B.[32]   These inspections never noted any defect, hazard or violation of the Department for not equipping bunk beds with ladders.[33]  In addition to the DOC audits, the Department had self-imposed measures to notify officials of potential concerns within the NSJ and HOC.[34]  Specifically, prior to February 2003, the inmate grievance coordinator reviewed grievances for potential issues; [35] the Health Services Administrator[36] reviewed medical records to evaluate what types of injuries inmates were sustaining while incarcerated at the HOC; Department personnel reviewed daily records, incident reports, Sheriff's Emergency Response Team (SERT) records and logbook records for potential issues, inmate discipline, employee discipline, medical issues and inmate injuries; and staff meetings with captains, lieutenants, and sergeants were held during which institutional issues were discussed.[37]  None of these reviews or meetings concerned inmates being injured while ascending to or descending from bunk beds.[38]

Therefore, Plaintiff cannot establish the first prong as he cannot establish actual or subjective knowledge on behalf of any prison official in order to demonstrate that Defendant

---

[32] Horgan Deposition, pp. 24-25, Exhibit B; Horgan Affidavit, Exhibit A.
[33] Horgan Affidavit, Exhibit A; Horgan Deposition, pp. 24-25, Exhibit B
[34] Horgan Affidavit, Exhibit A.
[35] Horgan Deposition, p. 31, Exhibit B.
[36] The Health Services Administrator is an employee of a private company that provides healthcare services at the HOC pursuant to a contract with Suffolk County.  She is not an employee of the Defendant.  Horgan Deposition, p. 36, Exhibit B.
[37] Horgan Affidavit, Exhibit A.
[38] Horgan Deposition, p. 37, Exhibit B.

maintained a custom or practice that was deliberately indifferent to Plaintiff's constitutional rights. Furthermore, Plaintiff cannot establish that housing inmates in a cell without a ladder constituted cruel and unusual punishment. The summary judgment record is void of any evidence to the contrary. Accordingly, Defendant is entitled to summary judgment as a matter of law.

3. **Plaintiff Cannot Establish That The Alleged Custom and/or Practice Was The Moving Force Behind The Alleged Constitutional Deprivation**.

In addition to the fact that Plaintiff cannot establish actual or subjective knowledge on behalf of any prison official, Plaintiff cannot establish that this alleged custom or practice of not having ladders attached to bunk beds was the moving force behind the alleged constitutional deprivation. In order to establish municipal liability, Plaintiff must demonstrate a "direct causal link" between an official policy or custom and an alleged constitutional violation." Quiles v. Kilson, 337 F. Supp. 2d 224, 232 (D.Mass. 2004) citing City of Canton, 489 U.S. at 375. The Plaintiff must identify either an official policy or a governmental custom that violates the Constitution. Id. In Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388 (1997), the Court held that "it is not enough for §1983 that plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." In this instance, Plaintiff cannot do so.

Here, there is nothing in the summary judgment record to establish that the practice of housing inmates in cells without a ladder to access the top bunk was the "moving force" behind Plaintiff's alleged constitutional deprivation. The six (6) alleged incidents over a period of one

year in 2002, with over 1750 inmates ascending and descending the top bunk over 1.2 million times, and the three (3) grievances over a three (3) year period do not establish a serious risk of harm nor actual or constructive knowledge of such risk to establish deliberate indifference.[39] Furthermore, having never identified any prison official with policy-making authority, Plaintiff cannot prove the subjective component to establish deliberate indifference.  As Plaintiff cannot establish actual or constructive knowledge on the part of prison officials, he cannot establish causation, that the "custom" was the moving force behind the alleged constitutional deprivation. Thus, Plaintiff's claim cannot survive summary judgment.

Additionally, as set forth above, Plaintiff cannot establish any constitutional violation. Specifically, Plaintiff cannot demonstrate that being housed in a cell without providing a ladder to the top bunk violated his constitutional rights.  There is nothing in the record to support any such constitutional violation. Compare Bordanaro, 871 F.2d at 1156 (Town of Everett had an unconstitutional practice in the form of a longstanding, widespread, and facially unconstitutional practice of breaking down doors without a warrant when arresting a felon).

Accordingly, Plaintiff cannot establish causation, that the "custom or practice" was the moving force behind the deprivation in order to establish deliberate indifference.  As a matter of law, Defendant is entitled to summary judgment.

### 4.    Plaintiff's 42 U.S.C. § 1983 Claim Is Nothing More Than a Negligence Claim

Notwithstanding the aforesaid, Plaintiff's claim pursuant to 42 U.S.C. § 1983 must be dismissed because it is nothing more than a disguised negligence claim, which has already been dismissed.  The inclusion of the words "deliberate indifference" does not transform a negligence claim into a deliberate indifference claim.  Mere negligence does not constitute deliberate

---

[39] The eleven (11) incidents over five (5) years with 85,408 inmates coming in and out of both the NSJ and HOC does not establish a serious risk of harm nor actual or constructive knowledge of such risk to establish deliberate indifference.

indifference for the purposes of an Eighth Amendment violation.  Estelle, 429 U.S. 97;  see Armstrong, 2006 WL 1968887 at *7 (negligence allegations of failing to provide climbing apparatus to top bunk not rise to level of improper conditions of confinement which violate the Constitution).

As Judge Lasker concluded in dismissing Plaintiff's negligence claim, there is no statute, regulation, practice or industry standard that requires that prison bunk beds be equipped with ladders.  Further, Plaintiff cannot establish that the practice of not placing ladders on bunk beds was contrary to other State and County Correctional facilities across Massachusetts. See Vann v. City of New York, 72 F.3d 1040, 1049 (2d. Cir. 1995) (deliberate indifference may also be shown through expert testimony that a practice condoned by the defendant municipality was 'contrary to the practice of most police departments' and was 'particularly dangers' because it presented an unusually high risk that constitutional rights would be violated.")  In fact, the record establishes that over the past twenty (20) years, Plaintiff was incarcerated at numerous County and State Correctional facilities.[40]  In addition to Suffolk County, he was incarcerated at Norfolk County House of Correction, Barnstable County House of Correction, Massachusetts Correctional Institution ("MCI") at Concord and MCI Bridgewater.[41]  In **each** of those institutions, there were no ladders on the bunk beds.[42]  Plaintiff testified that he would either use the bed frame of the bottom bunk or the lockers which were provided in the cells to hoist himself up to the top bunk.[43]  Indeed, over the twenty (20) years that Plaintiff has been in and out of correctional facilities, he has <u>never</u> fallen while ascending to and descending from his top bunk

---

[40] Connolly Deposition, pp. 17, 170-173, Exhibit C.
[41] Connolly Deposition, pp. 170-173, Exhibit C.
[42] Connolly Deposition, pp. 170-173, Exhibit C.
[43] Connolly Deposition, pp. 170-173, Exhibit C.

prior to this incident.[44]  Plaintiff also testified that he did not file any grievances at any of those institutions relating to the lack of ladders on the bunk beds.[45]

The choice to equip bunk beds with ladders is a discretionary function left to prison officials.  M.G.L. c. 126 §16 delegates to the Sheriff the responsibility for custody and control of inmates committed to the jail and house of correction.  Thus the legislature specifically provided for the discretionary function of prison officials in operating jails and houses of correction.  That type of discretionary function is exempt under M.G.L. c. 258 §10(b).  Tavarez v. Essex County, 49 Mass.App.Ct. 1113 (2000).  In Tavarez, the Court of Appeals held that a

> "decision whether to equip bunk beds in a correctional facility with ladders necessarily involves the balancing of the safety of the prisoners against the safety and security of corrections officers.  Such a decision is characterized by a high degree of discretion and the weighing of alternatives and, therefore, warrants immunity." Id.

See also, Bultema v. United States, 359 F.3d 379 (2004) (Federal prison's policy of not equipping top bunks with ladders was a discretionary function immune from suit under the Federal Tort Claims Act, U.S.C. §2680(a)); Fernandez v. The Federal Bureau of Prisons, 2001 WL 913929 (S.D.N.Y.) (Federal correctional facility's decision not to equip bunk beds with ladders was a discretionary function immune from suit under the Federal Tort Claims Act, 28 U.S.C. §2680(a)).

Accordingly, Plaintiff's deliberate indifference claim is nothing more than a negligence claim and it must be dismissed.  See Armstrong, supra.  Defendant is entitled to summary judgment.

---

[44] Connolly Deposition, p. 174, Exhibit C.
[45] Connolly Deposition, pp. 170-173, Exhibit C.

**B.      DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S STATE LAW NEGLIGENCE CLAIMS**

1.      <u>The Size of A Cell in A Prison is A Recommended Standard and the Housing of Prisoners is A Discretionary Function Under M.G.L. c. 258 §10(b)</u>

Plaintiff's negligence claim, that the size of the cell caused plaintiff to fall while ascending or descending a bunk, must be dismissed.  The standard, 105 CMR 451.321, which Plaintiff relies upon for this claim is a <u>recommended standard</u>, <u>not</u> a mandatory standard.  As such standard is a recommended standard and there is no requirement that prison officials enforce a recommended standard, Plaintiff's claim must fail.  Defendant is entitled to summary judgment as a matter of law.

Plaintiff alleged that "defendant, in violation of Commonwealth of Massachusetts Regulation 105 CMR 451.321, forced the Plaintiff to share a cell, which cell's dimension was less than 210 square feet, with two (2) other inmates." Amended Complaint, ¶7A.

Plaintiff's claim is based solely upon 105 CMR 451.321 which provides that:

Cell Size in New or Renovated Facilities:
"Each cell in a new facility or a part of a facility constructed after the effective date of 105 CMR 451.000 should contain:
    (A) For segregation and special management areas where inmates are usually locked in for greater than ten hours per day, at least 80 square feet of floor space for a single inmate.

    (B) For inmates usually locked in for less than ten hours per day, contain at least 70 square feet of floor space for a single inmate.  Provided, however, two inmates may occupy a room or cell designed for double occupancy which has a floor space of 120 square feet.  Floor space shall be calculated on the basis of total habitable room area which does not include areas where floor-to-ceiling height is less than eight feet."

However, 105 CMR 451.321 is not a mandatory standard requiring strict compliance.  Rather, it is a recommended standard under 105 CMR 451.012 leaving the decision and discretion to prison officials to determine if and how it will implement such recommendation.

105 CMR 451.012 provides that:

> "Recommended Standards (.300 Series)
> In addition, in order to provide physical living conditions adequate to maintain the
> health and safety of inmates of correctional facilities, the Department, pursuant to
> M.G.L. c. 111, § 5, **recommends that each correctional facility comply with
> the *Recommended Minimum Health and Sanitation Standards* set forth in 105
> CMR 451.320 through 105 CMR 451.390** (.300 Series)." (emphasis added)[46]

This language expressly provides for the discretionary function of prison officials in the care and

custody of inmates including the housing of inmates within its facilities.

In order to establish whether the discretionary function exempts an entity from liability

under Chapter 258 §10(b)[47], a two-part test is applied: 1) whether the governmental actor had

any discretion at all as to what course of conduct to follow and 2) whether the discretion

exercised rises to the level of policy-making or planning, the only type of discretion immunized

by 10(b). Alake v. City of Boston, 40 Mass.App.Ct. 610, 612, 666 N.E.2d 1022, 1024, 110 Ed.

Law Rep. 794, (1996) citing Harry Stoller & Co., v. Lowell, 412 Mass. 139, 587 N.E.2d 780

(1992); Whitney v. Worcester, 373 Mass. 208, 366 N.E.2d 1210 (1977).

As applied herein, there is no statute, regulation or policy that mandates a specific course

of action for officials regarding the placement and/or housing of inmates, rather it is a

discretionary function left to the discretion of the Sheriff. M.G.L. c. 126 §16 delegates the

authority for the custody and control of the jail and House of Correction, in Suffolk County, and

its inmates to the Sheriff. Prison officials have broad administrative and discretionary authority

over the management of the institutions. Diaz v. Maloney, 1998 WL 1181254 (Mass.Super.

---

[46] Compare with 105 CMR 451. 451.011: Required Standards (.100 and .200 Series) which provides that "Each correctional facility is required by M.G.L. c. 111, § 21 to comply with Required Minimum Health and Sanitation Standards set forth in 105 CMR 451.101 through 105 CMR 451.214 (.100 and .200 Series). Officials responsible for maintaining correctional facilities are responsible, under M.G.L. c. 111, § 21, for enforcing these Required Standards.
[47] Chapter 258 §10(b) provides that: "any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused."

1998) citing <u>Hewitt v. Helms,</u> 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1979); <u>see also</u>

<u>Jackson v. Commissioner of Correction</u>, 388 Mass. 700, 703, 448 N.E.2d 780 (1992) (statutory

and regulatory scheme gives the Commissioner broad discretionary authority concerning the

placement of prisoners).

    Second, the housing and placement of prisoners is the "kind of discretion for which

§10(b) provides immunity." <u>Stoller</u>, <u>supra</u> at 256.  In determining whether a particular

discretionary conduct has a policy or planning founding, the state courts look to federal court

decisions and the Federal Torts Claim Act ("FCTA") discretionary function exception.  <u>Horta v.</u>

<u>Sullivan</u>, 4 F.3d 2, 39 Fed.R. Evid. Serv. 508 (1st Cir. 1993); <u>Stoller</u>, <u>supra</u>.  Discretionary

functions include "determinations made by executives and administrators in establishing plans,

specifications or schedules of operations.  Where there is room for policy judgment and decision,

there is discretion." <u>Pina v. Commonwealth</u>, 400 Mass. 408, 414-15 (1987), quoting <u>Dalehite v.</u>

<u>United States</u>, 346 U.S. 15, 35-56, 356 S.Ct. 956, 967 (1953); <u>See</u> <u>United States v. Gaubert</u>, 499

U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1992) (purpose of discretionary function exception

is to prevent judicial "second guessing" of legislative and administrative decisions grounded in

social, economic and political policy through the medium of an action in tort) quoting <u>United</u>

<u>States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 814, 104

S.Ct. 2755, 81 L.Ed.2d 660 (1984); <u>Barnett v. City of Lynn</u>**,** 433 Mass. 662, 745 N.E.2d 344

(Mass. 2001) (holding city's decision not to erect a fence or other barrier based on a

determination of allocation of limited resources was protected by the discretionary function);

<u>Stoller</u>, <u>supra</u> at 142, citing <u>Whitney</u>, 373 Mass. at 219, (determination whether to incur the cost

of constructing a barrier at the top or bottom of the stairs is "an integral part of governmental

policymaking or planning" and protected by discretionary function).  The decision on the manner

to house inmates is a discretionary function and involves policy judgment and decision. Therefore, such decision is immune from liability under M.G.L. c. 258 § 10(b).

Finally, Defendant is entitled to summary judgment on this claim because Plaintiff cannot establish causation. Plaintiff cannot establish that the size of the cell caused plaintiff's fall or resulting injury. Defendant submits that there is no causal connection between the size of a cell and whether a bunk bed is equipped with a ladder. There is nothing in the record to support that Plaintiff's injury would have been prevented if the square footage of the cell were somehow different. Furthermore, the standard which Plaintiff relies is a recommended standard, thus making it impossible for Plaintiff to establish causation because prison officials were not required to comply with such standard. Plaintiff cannot establish any causal connection between the recommendation of this standard and bunk bed safety. See Sabree v. Conley, 62 Mass.App.Ct. 901, 904, 815 N.E.2d 280, 285 (2004) (holding "Plaintiff did not make out, by his conclusory allegations, violations of health and safety regulations 105 CMR 451.117, 451.130, 451.123, those would not in any event make out a private cause of action against prison officials"). Therefore, because Plaintiff cannot establish causation, his claim must fail as a matter of law.

In ruling on the motion to dismiss, Judge Lasker permitted Plaintiff's claim to continue stating that "discovery is necessary to clarify whether the language employed by the regulation at issue permits discretion by defendant and whether such discretion is the kind for which M.G.L. c. 258 § 10(b) provides immunity from liability." Discovery has now ended. The summary judgment record is void of any support for Plaintiff's claim. There is no statute, regulation or other binding law that requires the Defendant to provide a certain square footage of space in cell and Plaintiff has not offered any evidence to the contrary. Furthermore, Plaintiff cannot establish

22

causation.  Accordingly, the placement of prisoners within a correctional institution is a discretionary function under Chapter 258 §10(b).  Defendant is entitled to summary judgment as a matter of law.

### 2. Defendant Owed No Duty To Instruct Plaintiff On The Manner In Which To Ascend and Descend His Bunk Bed

Defendant is entitled to summary judgment as a matter of law because Defendant owed no duty to Plaintiff to instruct on the manner in which to ascend or descend his bunk bed.

In his Amended Complaint, Plaintiff alleges that "Defendant required Plaintiff to sleep on a bunk bed located above the floor of his assigned cell … without instructing the Plaintiff in a safe manner of ascending to and descending from said bed." Amended Complaint ¶7.  Defendant submits that it was under no duty to instruct the Plaintiff on the manner in which to ascend and descend the bunk beds, an open and obvious condition.  As Plaintiff cannot prove that there was such a duty, this claim must fail.

"[I]t is well established in our law of negligence that a landowner's duty to protect lawful visitors against dangerous conditions on his property ordinarily does not extend to dangers that would be obvious to persons of average intelligence."  Escurra v. Shawmut Design & Const., 68 Mass.App.Ct. 1117, 864 N.E.2d 42 (Mass.App.Ct. 2007) citing O'Sullivan v. Shaw, 431 Mass. 201, 204 (2000) (holding no duty to warn of danger of working on scaffold as it is an open and obvious condition).  "The open and obvious rule affects not only the duty to warn, but 'operates to negate the existence of a duty of care.'" Id. at 206; See Barnett, 433 Mass. 662 (Court held that the danger of sledding down stairs which lead to a road well traveled by cars was so open and obvious even to a child exercising reasonable care for his own safety, that the city had no duty to post warning signs); O'Sullivan, 431 Mass. 201 (homeowner had no duty to warn plaintiff of the open and obvious danger in diving headfirst into the shallow end of swimming

pool); <u>Greenslade v. Mohawk Park, Inc</u>., 59 Mass.App.Ct. 850 (2003) (Campground owner had no duty to warn visitor of danger of swinging from rope suspended over river where the danger was open and obvious); <u>Tecco v. Columbiana County Jail</u>, 2000 WL 1902210 (Ohio App. 7 Dist) (prison officials had no duty to warn inmate that windows in recreation contained non-safety type glass as windows presented an open and obvious danger).

There is no duty to warn of open and obvious conditions. The defendant owed Plaintiff no duty to instruct him in so obvious an endeavor as the exercise of caution in ascending to or descending from a top bunk. Plaintiff admitted that in the various facilities he has been incarcerated over more than twenty (20) years, no one instructed him on the manner in which to ascend or descend his bunk bed.[48] Despite this claim of a failure to instruct, Plaintiff admitted in the more than twenty (20) years he has been incarcerated, he never fell while ascending to or descending from his bunk bed, none of which had ladders.[49] As there is no duty to instruct, Plaintiff's failure to instruct claim must be dismissed. Defendant is entitled to summary judgment as a matter of law.

## V.    CONCLUSION

For the reasons set forth above, Defendant Suffolk County is entitled to judgment as a matter of law on all counts.

## VI.    REQUEST FOR ORAL ARGUMENT

Defendants request oral argument on the above motion.

---

[48] Connolly Deposition, p. 174, Exhibit C.
[49] Connolly Deposition, pp. 170-174, Exhibit C.

Respectfully submitted for,
Defendant, Suffolk County
By its attorney,

Date: November 9, 2007                    /s/ Alison G. Fabella_____
                                          Alison G. Fabella
                                          BBO#654858
                                          Assistant General Counsel
                                          200 Nashua Street
                                          Boston, MA 02114
                                          (617) 961-6678