UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL NO.04-10835-MEL

```
_____
                         )
DAVID M. GOLDEN,         )   PLAINTIFF JOHN T. CONNOLLY'S
ET ALS, Plaintiffs       )   OPPOSITION TO DEFENDANT'S MOTION
                         )   FOR SUMMARY JUDGMENT
     VS.                 )
                         )
COUNTY OF SUFFOLK,       )
Defendant                )
_____)
```

Now comes the plaintiff John T. Connolly and opposes the defendant's motion for summary judgment, as there are genuine issues of material facts demonstrated in the pleadings, depositions, answers to interrogatories and affidavits, as set forth herein.

**I. THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED**

The burden is upon the party moving for summary judgment to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P.56©). A fact is material if it "might affect the outcome of the suit under the governing law". Anderson v. Liberty Lobby, Inc., 477 U.S. 242,248,106 S.Ct. 2505,91 L.Ed. 2d 202 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact is in dispute "is such that a reasonable jury could return a verdict for the nonmoving party.". Id.
Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317,324,106 S.Ct. 2548,91 L.Ed. 2d 265 (1986). The Court

must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905,907 (1st Cir.1993).

**A. THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT II OF THE PLAINTIFF'S AMENDED COMPLAINT, ALLEGING A DEPRIVATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. S.1983, SHOULD BE DENIED**

42 U.S.C. S.1983 state in pertinent part that:

"Any person who, under color of any law, statute, ordinance, regulation, custom or usage of any State, shall subject, or cause to be subjected, any person...to the deprivation of any rights, privileges...secured by the Constitution of the United States, shall ... be liable to the party injured in any action at law...".

The elements of a S.1983 cause of action have been stated as follows:

"The plaintiff must prove that (1) a person (2) acting under color of law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States.".City of Oklahoma City v. Tuttle, 471 U.S. 808,829,105 S.Ct. 2427,85 L.Ed. 2d 791 (1985)(Brennan, Marshall, Blackmun, JJJ, concurring).

Local governing bodies are "persons" who may be liable pursuant to S.1983. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018,56 L.Ed. 2d 611 (1978). This definition includes counties. Ford v. City of Boston, 154 F.Supp.2d 131 (D. MA.) (2001).

**i. THERE IS SUFFICIENT SUMMARY JUDGMENT RECORD EVIDENCE TO ESTABLISH AN ISSUE OF MATERIAL FACT AS TO WHETHER THE PLAINTIFF SUFFERED A DEPRIVATION OF HIS EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENTS WHILE INCARCERATED**

Persons involuntarily confined by the state have a

constitutional right to safe conditions of confinement. <u>Youngberg v. Romeo,</u> 457 U.S. 307,315-16,102 S.Ct. 2452,73 L.Ed. 2d 281 (1982). The Eighth Amendment entitles inmates in a penal institution to an adequate level of personal safety. This is required because inmates, by reason of their confinement, cannot provide for their own safety. <u>Hoptowit v. Spellman,</u> 753 F.2d 779,784 (9th cir.1985), citing <u>Estelle v. Gamble,</u> 429 U.S. 97, 103-4,97 S.Ct. 285,50 L.Ed. 2d 251 (1976).

In order to establish an Eighth Amendment violation, a plaintiff must show both an objective and a subjective component. <u>Farmer v. Brennan,</u> 511 U.S. 825, 834,114 S.Ct. 1970,128 L.Ed. 2d 811 (1994).

First, the deprivation alleged must be, objectively, sufficiently serious. For a claim based upon a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. <u>Id.</u>

Secondly, he must show that prison officials subjectively had a state of mind of deliberate indifference to inmate health or safety. <u>Id.</u> "Deliberate indifference" in the Eighth Amendment context means that prison officials must subjectively be aware of facts from which an inference can be drawn of a substantial risk of serious harm to an inmate, and must in fact draw such inference; and must disregard this excessive risk by failing to take reasonable measures to abate the risk. <u>Id.</u>

The plaintiff need not prove that prison officials acted or failed to act believing that harm would actually occur to the plaintiff. It is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. Id. at 842. Whether prison officials had the requisite knowledge is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. Id. Advance notification by a prisoner of a dangerous condition is not a necessary element of an Eighth Amendment failure to protect claim. Id. at 849. A prison official may not escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the plaintiff was especially likely to be injured. Id. at 844.

The summary judgment record establishes that:

The plaintiff inmate John Connolly ("Connolly") was assigned by the Suffolk County Sheriff's Department ("SCSD") to a cell at the Suffolk County House of Correction ("SCHOC") which housed 3 (three) inmates. (See Defendant's answers to interrogatories marked "A" and annexed herewith, answer number 6; F.R. Civ.P Rule 30(b)(6) deposition of defendant ("defendant deposition") marked "B" and annexed herewith, p.21,l.4); and which cell contained 3 (three) beds, including a top bunk located approximately 5 (five) feet above the ground.(defendant deposition, p.21;ll.2-3,24).

Connolly was told by a corrections officer at the time he was

assigned the cell that he was to use the top bunk. (See deposition of plaintiff ("plaintiff deposition") marked "C" and annexed herewith, p.34,l.24-P.35,l.1-6).

Prior to February 3, 2003 there were at least 13 (thirteen) instances of inmates at the facilities at SCHOC or Suffolk County Jail ("SCJ") allegedly being injured while attempting to climb up to or down from a top bunk bed and/or from falls from the top bunk. Of these, nine (9) were recorded in internal SCSD reports [1]; 2 (two) were documented in letters from attorneys representing allegedly injured inmates; and one (1) was contained in an internal inmate grievance form [2]. The records on their face indicate that in 9 (nine) of these instances the affected inmates required medical treatment, including 3 (three) instances where the inmate was transported out of the institution to a hospital for medical treatment. (See defendant deposition, pp.39-56).

In addition, the actual number of inmates injured in this fashion prior to 2002 is unknown to the parties, and can only be ascertained by researching all of the internal incident reports filed prior to 2002. (See defendant deposition, p.61;ll.4-15). [3]

---

[1] Prior to February, 2003, the SCSD had policy or procedure in effect whereby internal incident and medical reports were reviewed by SCSD staff in order to keep abreast of injuries that were occurring at the SCHOC facility. (See Defendant deposition, pp.35-37).

[2] There was also a procedure in effect whereby the inmate grievance coordinator would bring certain grievance issues to the attention of command staff. (See Defendant deposition, p.30;ll.1-6).

[3] Discovery in this case has revealed SCSD internal reports of instances of eleven (11) inmates allegedly being injured regarding the top bunk in 2005. Accordingly, the likelihood of the existence of additional such instances having been recorded in incident reports for the years prior to 2002 (and for the year 2003 occurring between 1/1/03-2/3/03 is extremely high, if not a virtual certainty.

Prior to February 3, 2003, the SCSD command staff (including the

superintendent) had a meeting regarding the issue of inmates the issue of inmate being injured in this fashion.

To the knowledge of SHOC superintendent Gerard Horgan ("Supt. Horgan") [4] there were 3 (three) safe ways as of February 2003 for inmates to climb up onto the top bunk: By stepping onto the bottom bunk and then climbing up to the top bunk; by stepping onto a plastic chair and then climbing up to the top bunk; and by stepping onto a wooden table and then climbing up to the top bunk. (See defendant deposition, p.26;ll.1-17).

Inmates were not allowed to put additional furniture in their cells beyond that furnished by SCSD. (See defendant deposition, p.24;ll.3-5).

Prior to February 2003, inmates (including Connolly) were not given instructions by SCSD as to how to get up onto the top bunk. (See defendant deposition, p.32;ll.16-18; See plaintiff deposition, p.56;ll.14-16).

As of February 2003, Connolly's cell was equipped with only the three (3) beds, a plastic chair and a property bag (See plaintiff deposition, p.40;ll.14-21) and not a wooden table.

On February 3, 2003, while standing on the plastic chair while

---

[4] **The superintendent of SCHOC is responsible for the day to day operations at SCHOC; for ensuring that policies and procedures of the SCSD are followed; and for overseeing command staff at SCHOC. (See Defendant deposition, p.10;ll.11-23). Supt. Horgan has been superintendent of SCHOC since November 2003. (Id., p.9,l.9). Prior to that, he was deputy superintendent from 1999 to January 2003. (Id., p.9,l.20-23). During the period of January 2003 to November 2003 he was superintendent at SCJ. (Id., p.9,l.24-p.10,l.1). Supt. Horgam is also the acting sheriff of Suffolk County in instances where the Sheriff is unavailable or incapacitated. (Id., p.9,l.3-5).**

in the process of attempting to climb up to the top bunk, the chair

gave out and Connolly fell and was injured (see plaintiff deposition, pp.61-65); suffering a fracture arm necessitating surgical removal of the radial head bone. (See plaintiff deposition, p.121-122).

It is submitted that the above-recited record facts create issues of material fact with respect to both the objective and subjective prongs required to establish an Eighth Amendment violation.

The fact that at least 13 (thirteen) inmates (and undoubtedly more, possibly many more) had been injured while climbing up to or down from the top bunk and/or falling from the top bunk prior to Connolly's incident, at least nine (9) of whom (and probably many more) who required medical treatment, creates a material issue of fact as to whether the deprivation was objectively sufficiently serious. In addition, the record establishes that Connolly was required by the SCSD to occupy the cell in question and to use the top bunk as his assigned bed.

In Gill v. Mooney, 824 F.2d 192 (2d Cir.1987), an inmate was required by prison officials to use an unsafe ladder which the officials knew was unsafe, thus constituting a sufficiently serious hazard to satisfy the objective prong.

Likewise in the instant case, the summary judgment record establishes that Connolly was incarcerated under conditions posing a substantial risk of serious harm.

In addition, the subjective prong is also met because the prior

7

incidents supply actual knowledge by SCSD officials that inmates were being injured prior to February 3, 2003 while attempting to climb up to and down from the top bunk, and disregarded the risk by failing to take reasonable measures to abate the risk, such instructing Connolly in safe way(s) to access the top bunk and/or furnishing his cell with a wooden table (a recognized safe way to access the top bunk) to utilize.

The cases cited by the defendant in its motion for summary judgment are distinguishable from the facts in the instant case. Although the District Court Judge in Armstrong v. Terrebonne Parish Sheriff, 2006 WL 1968887, 6 (E.D. LA.2006) ruled that the Eighth Amendment does not require prison officials to equip bunk beds with ladders, there was no evidence in that case of a prior documented history of similar incidents and knowledge of the same by prison officials, nor of a failure by prison officials to instruct inmates in a safe method of accessing the top bunk.

Osolinski v. Kane, 92 F.3d 934 (1996), unlike the instant case, is a case regarding the issue of whether individual municipal defendants were entitled to qualified immunity, and held that those officials were qualifiedly immune because, in light of clearly established principles at the time of the incident, a reasonable prison official could have believed that a failure to repair an oven did not violate the Eighth Amendment (at p.939). The court relied upon the fact that then existing case law had held that

8

minor safety hazards were found not to violate the Eighth Amendment.

### ii. THERE IS SUFFICIENT SUMMARY JUDGMENT RECORD EVIDENCE TO ESTABLISH AN ISSUE OF MATERIAL FACT AS TO WHETHER THE PLAINTIFF'S CONSTITUTIONAL DEPRIVATION WAS CAUSED BY A POLICY OR CUSTOM OF THE DEFENDANT-COUNTY OF SUFFOLK

The summary judgment record establishes an issue of material fact as to whether Connolly was injured as a result of the policy and/or custom of the SCSD to require inmates to climb up to a top bunk without instructing inmates in a safe manner of doing so.

A municipal "policy" within the meaning of 42 U.S.C. S.1983 is defined as a course of action consciously chosen from among various alternatives by those whose edicts or acts may fairly be said to represent official policy. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823, n.5. 105 S.Ct. 2427,85 L.Ed. 2d 791 (1985).

A municipal "custom" within the meaning of 42 U.S.C. S.1983 is defined as practices of state officials so permanent and well-settled as to constitute a custom or usage with the force of law, and is attributable to the municipality if it is so well-settled and widespread that policy making officials can be said to have either actual or constructive knowledge of it and do not end the custom or practice. Bordonaro v. Mcleod, 871 F.2d 1151,1156(1989).

As set forth above, Supt. Horgan testified that he has been the superintendent at SCHOC since November 2003, and as such is responsible for the day to day operations and ensuring that the policies and procedures of the SCSD are followed; overseeing

command staff; ands is the acting sheriff in the event of the sheriff's unavailability. He also testified that he is a member of the policy review committee. (See defendant deposition, p.10;ll.18-19). As set forth above, he was deputy superintendent at SCHOC from 1999 to January 2003, and was superintendent of SCSD's SCJ facility from January 2003 to November 2003. He further testified that his only superiors at SCHOC are the sheriff and the sheriff's chief of staff. (Id.,p.11,ll.3-4).

Supt. Horgan testified that in 2003 the SCHOC had certain cells (including Connolly's assigned cell) that were occupied by 3 (three) inmates, one (1) of whom was assigned a top bunk. (Id.,p.16,ll.23-24-p.17,ll1-14; p.21,ll.2-4). A set forth above, Connolly was assigned to the top bunk.

Also as set forth above, prior to February 3, 2003 the command staff at SCHOC had a meeting concerning the issue of inmates being injured from the top bunks; Supt. Horgan had knowledge of 3 (three) safe ways for inmates to access the top bunk; and inmates were not instructed regarding safe ways to access the top bunks.

Accordingly, the summary judgment record establishes that there was a policy at SCHOC as of February 3, 2003 of assigning inmates to be "triple bunked" in cells and assigning one (1) of the inmates in the cell to use the top bunk; as well as a custom or practice of not instructing inmates as to the safe method of accessing the top bunk.

A 42 U.S.C. S.1983 plaintiff must prove that the municipal

10

defendant's policy or custom caused the Constitutional deprivation, <u>Monell,</u> supra, in that the municipal policy or custom must be the moving force behind the Constitutional violation. <u>City of Oklahoma City,</u> supra.

Here, Connolly was injured as a direct result of complying with the SCSD's policy that he utilize the top bunk in a three (3) person cell. He was injured when the leg of a plastic chair he was standing on buckled, causing him to fall. There exists an issue of material fact as to whether the SCSD's custom or practice (which existed with the actual or constructive knowledge of SCSD policy making officials) of not instructing inmates as to a safe method of accessing the top bunk was a moving force behind the Constitutional deprivation.

As set forth above, There exists an issue of material fact as to whether the SCSD's custom or/and practice occurred with deliberate indifference to inmate health or safety.

**B. THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF THE PLAINTIFF'S AMENDED COMPLAINT ALLEGING NEGLIGENCE IN FAILING TO INSTRUCT PLAINTIFF IN A SAFE MANNER TO ACCESS THE TOP BUNK, SHOULD BE DENIED**

The defendant in its motion for summary judgment seeks to re-assert its failed argument, previously rejected by this Court (Lasker,J) in its denial of the defendant's motion to dismiss pursuant to F.R.Civ.P.Rule 12(b)(6), that it owed no legal duty to instruct the plaintiff in a safe method of accessing the top bunk because the ascension and descension of a bunk bed is an open and

obvious condition.

The law is well-settled that:

"One who is required by law to take or voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a duty to protect the other against unreasonable risk of physical harm." Slaven v. Salem, 386 Mass. 885 (1982).

As this Court indicates in its endorsement denying the motion to dismiss the failure to instruct portion of plaintiff's complaint (see endorsement annexed herewith and marked "D"), plaintiff's cause of action is not based upon an alleged failure by the defendant to warn the plaintiff of a dangerous condition (and of which there is no duty if in fact the dangerous condition is open and obvious, as per the cases cited by the defendant in its supporting memorandum of law), but rather of failing to instruct the plaintiff in a safe manner to access the top bunk, an activity which the defendant required the plaintiff to perform.

The summary judgment record amply establishes that the defendant required the plaintiff to access the top bunk, knew or should have known of risk of harm from such activity, yet failed to instruct the plaintiff in a safe manner of doing so ( including failing to provide him with a wooden table, a manner of accessing the top bunk which the defendant knew was safe), thus causing injury to the plaintiff.

Accordingly, the defendant's motion should be denied.

                                Respectfully Submitted,

                                Plaintiff John T. Connolly

                                By his attorney,

                                _____

                                /s/ ROBERT H. TOBIN, JR.
                                TOBIN AND TOBIN, PC
                                735 South Street
                                Roslindale, MA 02131
                                Tel. (617) 325-1010
                                B.B.O. NO. 499425

Dated:____11-23-07

## CERTIFICATE OF SERVICE

     I, ROBERT H. TOBIN, JR., attorney for the plaintiff hereby certify that I have on this day served a copy of this document by delivering the same this day, postage pre-paid, to the attorney for the defendant, Suffolk County Sheriff's Department, 200 Nashua Street, Boston, MA 02114, Attention: Ellen M. Caulo Esq. and Alison Fabella, Esq.

    Signed under the penalties of perjury this 26th day of November, 2007.

_____        /s/  ROBERT H. TOBIN, JR.