UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10835-RGS

JOHN CONNOLLY,

v.

COUNTY OF SUFFOLK,

MEMORANDUM AND ORDER ON
MOTION FOR SUMMARY JUDGMENT

February 1, 2008

STEARNS, D.J.

On February 3, 2003, plaintiff John Connolly, a prisoner serving a sentence at the Suffolk County House of Corrections (SCHOC), fractured his arm after falling from a bunk bed in his cell. Connolly filed a two count Complaint against defendant County of Suffolk (County) alleging negligence under the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, and violations of the Eighth Amendment under the Federal Civil Rights Act, 42 U.S.C. § 1983. At the conclusion of discovery, the case was transferred by Judge Lasker to this session. The County then filed a motion for summary judgment. A hearing on the motion was held on January 30, 2008. The motion will be ALLOWED as to Connolly's Eighth Amendment Cruel and Unusual Punishments claims. Connolly's state-law negligence claim will be DISMISSED without prejudice.

BACKGROUND

The Suffolk County Sheriff's Department is a division of the County. The Department manages two correctional facilities, the Nashua Street Jail (NSJ) and SCHOC. Each facility has its own superintendent who oversees daily operations and supervises

staff. The superintendents in turn answer to Andrea Cabral, the elected Sheriff of Suffolk County.[1]

From July 1, 2002, to February 4, 2003, Connolly was assigned to Cell #19 in the 4-3 Unit of SCHOC. The cell was furnished with a three-tier bunk bed, a plastic chair, and a property bag. On February 3, 2003, while using the plastic chair to climb into the top tier of the bed, Connolly fell and fractured his arm. The bunk bed had no ladder attached to facilitate access to its upper tiers.

Connolly has been incarcerated at various Massachusetts state and county corrections facilities almost continuously since 1981.[2] Bunk beds are somniferous accessories in most, if not all, Massachusetts prisons. No prison in which Connolly has been housed equips bunk beds with ladders. Like other inmates, Connolly would use the frame of the lower bunk or a piece of furniture to clamber into the upper bunk. Connolly had never previously complained about the absence of a ladder, nor had he ever previously taken a fall. (While at SCHOC, Connolly estimated that he climbed in and out of bed between six and nine times daily).

From 1999 to 2003, 85,408 inmates were incarcerated at the NSJ and SCHOC. During this period of time, the County recorded eleven incidents of inmates injured in bunk

---

[1]In November of 2002, Cabral succeeded former Sheriff Richard J. Rouse.

[2]Connolly was previously incarcerated at SCHOC from 1991-1992, 1995-1998, 1998-1999, 1999-2001, and 2001-2005. He has also been incarcerated at the former House of Correction on Deer Island, at MCI Concord, at the Norfolk County House of Correction, the Barnstable County House of Correction, and MCI Bridgewater.

2

bed accidents. (Connolly claims that there were thirteen such incidents).[3] Between 2000 and 2003, three inmate grievances were filed at SCHOC relating to bunk beds.[4] In 2002, the year of Connolly's fall, the County estimates that SCHOC inmates climbed in and out of the top tier of a bunk bed over 1,277,500 times.[5]

In 2000, County corrections officials considered whether to install ladders on the bunk beds at the NSJ and SCHOC. They concluded that ladders would invite inmate suicide attempts. They also feared that ladders could be disassembled and converted into weapons. Consequently, they decided against installing ladders.[6]

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact and that the moving party

---

[3]In 1999, 15,710 inmates were incarcerated at SCHOC and the NSJ; one inmate fell from a bunk bed at the NSJ. In 2000, there were 16,078 inmates housed at SCHOC and the NSJ; there was one fall from a bunk at SCHOC and one at the NSJ. In 2002, the total population was 17,515 inmates; there were six alleged falls at SCHOC. In 2003, there was one alleged fall at SCHOC in a total population of 19,109 inmates. Defendant did not provide statistics for 2001.

[4]A grievance filed in August of 2000 involved an inmate in a cast who fell while climbing down from his bunk; another grievance filed in January of 2001 involved a request for a bottom bunk by an overweight inmate; a third grievance filed in January of 2001 involved an inmate request for a bottom bunk because of a diseased leg.

[5]Defendant calculated this number as follows: 1750 inmates (the average daily population) divided by 3 (1/3 of the population slept on the top bunk) x 365 days per year x 6 (the estimated number of times inmates accessed the top tier of a bunk each day) equals 1,277,500.

[6]At least once every six months, the Massachusetts Department of Correction (DOC) is required by law to conduct a safety audit of SCHOC and the NSJ. See Mass. Gen. Laws ch. 127 §1B. The DOC inspectors have never cited the County for failing to equip bunk beds with ladders.

is entitled to a judgment as a matter of law." Gaskell v. Harvard Co-op Soc., 3 F.3d 495, 497 (1st Cir. 1993). "In this context, 'genuine' means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party." Rodriquez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993). To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position. Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990). If this is accomplished, the burden then "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation and from which a reasonable jury could find for the [nonmoving party]." Id. The nonmoving party "must adduce specific, provable facts which establish that there is a triable issue." Id. "There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).

## SECTION 1983 EIGHTH AMENDMENT CLAIMS

### The Conditions of Confinement Claim

Section 1983 "does not, by its own terms create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996), citing Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). A violation of a "right" that is not "secured" by federal law is not

actionable under section 1983.  Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 106 (1989).[7]

So too, "the Eighth Amendment is not a general font of prohibition of all harsh and oppressive measures, but only of those that are penal in nature. . . . [W]here government as part of his punishment confines a prisoner in circumstances, the undue harshness of which the authorities know or recklessly disregard, these conditions count as part of that punishment and for that reason may violate the Eighth Amendment."  Opinion of the Justices, 423 Mass. 1201, 1239 (1996).  Whether prison conditions are sufficiently onerous to establish an Eighth Amendment violation is a purely legal determination to be made by the court.  Hickey v. Reeder, 12 F.3d 754, 756 (8th Cir. 1993), citing Hudson v. McMillian, 503 U.S. 1, 6 (1992).

Two requirements must be met to sustain a section 1983 conditions of confinement claim.  First, the alleged violation must be "sufficiently serious," that is, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Stated another way, to rise to the level of

---

[7]A proper analysis of a section 1983 claim must begin with the Constitution itself. "Where a particular Amendment 'provides an explicit textual source of constitution protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process' must be the guide for analyzing' such a claim." Albright v. Oliver, 510 U.S. 266, 274 (1994), quoting Graham v. Connor, 490 U.S. 386, 395 (1989).  The parties agree that Connolly's only potential constitutional claim arises under the Eighth Amendment's Cruel and Unusual Punishments Clause.

an Eighth Amendment violation, prison conditions must be so serious as to deprive an inmate "of the minimal civilized measure of life's necessities." Id.[8]

Thousands of Massachusetts inmates access bunk beds daily without the aid of a ladder and without incident. However unfortunate Connolly's accident, the failure of prison officials to equip his bunk bed with a ladder simply does not amount to a deprivation of "a minimal civilized measure of life's necessities." Id. Cases involving similar complaints about the vicissitudes of prison life are uniformly in accord. See e.g., Brown v. Bargery, 207 F.3d 863, 868 (6th Cir. 2000) (the improper installation of a bunk in a cell causing an inmate to fall out of bed and suffer skin abrasions did not give rise to a viable claim under the Eighth Amendment); Osolinski v. Kane, 92 F.3d 934, 939 (9th Cir. 1996) (same, failure to repair a prison oven, the door of which fell off and burned an inmate's arm); Armstrong v. Terrebonne Parish Sheriff, 2006 WL 1968887, *6 (E.D. La. June 6, 2006) (a swivel chair is a reasonable and constitutional means of accessing the top tier of a ladderless bunk).

The second prong of the Eighth Amendment inquiry requires a showing that the responsible prison official had "a sufficiently culpable state of mind" amounting to "deliberate indifference" to an inmate's health or safety of a degree indicative of an intent to wantonly inflict pain. DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991), citing Wilson v. Seiter, 501 U.S. 294, 297, 299 (1991). This standard, which requires actual knowledge of the risk of harm on the official's part, has been likened to the mental state

---

[8]Prison officials have a duty to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Id. at 832.

required to prove criminal recklessness. See Farmer, 511 U.S. at 839-840 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment."); Giroux v. Somerset County, 178 F.3d 28, 32 (1st Cir. 1999) (criminal recklessness requires a person to "consciously disregar[d] a substantial risk of serious harm," citing Model Penal Code § 2.02(2)(c)); Osolinski, 92 F.3d at 937 (an Eighth Amendment claim against a prison official in a section 1983 suit must meet two requirements, one subjective, the other objective: under the subjective requirement, the official must be shown to have acted with deliberate indifference to inmate safety; under the objective requirement, it must be shown that the official could not have believed that his conduct was lawful under principles clearly established at the time of the incident).

The essence of "deliberate indifference" is the callous disregard of an individual's rights. See Wood v. Ostrander, 879 F.2d 583, 589 (9th Cir. 1989). Deliberate indifference is often manifested by the protracted failure to alleviate a substantial and known risk of harm. Farmer, 511 U.S. at 838. Cf. County of Sacramento v. Lewis, 523 U.S. 833, 853 (1998). The antithesis of deliberate indifference is what transpired here. Rather than ignore the risk to inmates posed by ladderless bunks, County officials affirmatively weighed the benefits of equipping prison bunk beds with ladders against a perceived risk that the ladders could be converted into weapons or facilitate inmate suicides. Whether County officials assessed the relative risks correctly is not the issue. "Prison administrators . . . [are] accorded wide-ranging deference in the adoption and

execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Whitley v. Albers, 475 U.S. 312, 321-322 (1986), quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979). Because the first of Connolly's Eighth Amendment claims meets neither of the required tests, it must perforce fail.

### The Policy or Practice Claim

As an alternative theory, Connolly alleges that his injury was caused by the County's "custom or policy" of requiring inmates "to climb up to a top bunk without instructing inmates in a safe manner of doing so." Connolly Memorandum, at 9. A government entity causes a constitutional injury by implementing a constitutionally unsound policy, ordinance or regulation, or by condoning an unconstitutional custom or practice. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 (1997); Monell v. Dep't of Social Servs., 436 U.S. 658, 690-691 (1978). A plaintiff, however, must not only show an unconstitutional custom or practice, but also that the custom or practice "actually caused" him to suffer a *constitutional* injury. City of Canton v. Harris, 489 U.S. 378, 391 (1989). See also Polk County v. Dobson, 454 U.S. 312, 326 (1981) (custom or policy must be the "moving force" behind the injury). Because Connolly has failed to show that he suffered any constitutional deprivation, the second variant of his section 1983 claim must also fail.

### Negligent failure to warn[9]

---

[9]Connolly alternatively alleged that the County was negligent in failing to equip inmate bunk beds with ladders. Judge Lasker dismissed this second variant, ruling that the decision by prison officials not to provide ladders fell within the discretionary function

8

Connolly also asserts that the County's failure to instruct inmates on bunk bed safety constituted ordinary negligence.[10] This is not a claim that the court will address. When a federal court dismisses a Complaint's foundational federal claims, the balance of competing factors ordinarily favors declining jurisdiction over any pendent state law claims, particularly in the early stages of a suit. Camelio v. American Federation, 137 F.3d 666, 671 (1st Cir. 1998). The factors to be considered under the pendent jurisdiction doctrine include judicial economy, convenience, fairness, and comity. Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir.1995). Although this litigation is well-advanced, principles of comity weigh heavily in favor of declining Connolly's state-law negligence claim and permitting the matter to be resolved by the state court.[11] The interest of the

---

exception of the Massachusetts Tort Claims Act, Mass. Gen. Laws. ch. 258, § 10(b). See also Tavarez v. Essex County, 49 Mass. App. Ct. 1113 (2000) (unpublished opinion) ("A decision whether to equip bunk beds in a correctional facility with ladders necessarily involves the balancing of the safety of the prisoners against the safety and security of correction officers. Such a decision is characterized by a high degree of discretion and the weighing of the alternatives and, therefore, warrants immunity.").

[10] A claim of negligence is not actionable under section 1983. To be actionable under the Due Process Clause, misconduct by state actors must exceed a high threshold of allowance for human shortcomings in managing the intricate processes of government. "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process. . . . It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." County of Sacramento, 523 U.S. at 849. See also Davidson v. Cannon, 474 U.S. 344, 347- 348 (1986) (a merely negligent deprivation of life, liberty, or property, "simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent.").

[11] Plaintiff's attention is directed to Mass. Gen. Laws ch. 260, § 32 . See DeSantis v. Commonwealth Energy Sys., 68 Mass. App. Ct. 759, 766 (2007) ("After dismissal of DeSantis's pendent State claims he was entitled to renew them in the Superior Court within

Commonwealth in the issues of inmate safety and institutional security raised by this remaining claim far outweigh any similar or competing federal concerns.

## ORDER

For the foregoing reasons, the County's motion for summary judgment on Count II of the Complaint is <u>ALLOWED</u>. Count I is <u>DISMISSED</u>, however, without prejudice. The Clerk may now close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE

---

one year.").